<hr />

(9 Misc. Rep. 206.)

### BRAINARD v. KNAPP et al.

(City Court of New York, General Term. June 20, 1894.)

ESTOPPEL—OWNERSHIP OF PROPERTY IN POSSESSION OF THIRD PERSON.

Where the owner of a horse puts it in the possession of another, who, with the knowledge of the owner, puts the horse to board at a livery stable, it is a question for the jury whether the owner is estopped to assert his title as against third persons who dealt on the apparent ownership of the person in whose possession the owner had placed the horse.

Appeal from trial term.

Action by Frank Brainard, as executor, etc., against Sheppard Knapp and others. From a judgment entered on a verdict in favor of plaintiff, and from an order denying a motion for a new trial, defendants appeal. Reversed.

Argued before FITZSIMONS and CONLAN, JJ.

Eugene F. Daly, for appellants.
Jacob Fromme, for respondent.

CONLAN, J. This is an appeal from a judgment entered upon a verdict by direction of the court. This action was brought to recover possession of a horse from the defendants, who were livery or boarding stable keepers in West Fifty-Sixth street, in this city. The evidence shows that in the latter part of 1887, or the early part of 1888, the plaintiff, who resided at Portland, Conn., placed in the possession of one Blodgett, who resided in the city of New York, for sale, the sorrel horse which is the subject of this action. It further appears that Blodgett put the horse in the stable of one Dickles, for keeping, where it remained until the early summer of 1889, when it was removed to the stable of the defendants, remaining there until about April 20, 1890, when it was taken from the possession of the defendants by the sheriff upon a writ of replevin in this action. The horse appears to have been kept, both in Dickles' stable and the defendants', as the property of Blodgett. The plaintiff knew the horse was being boarded and cared for at Dickles' stable for over a year, and that it was put there by the person to whom he had given possession for the purpose of effecting a sale. It also appears that plaintiff learned, some time in the year 1889, that Blodgett had placed the horse for keeping in the stable of the defendants, where he permitted it to remain until about the middle of April, 1890, when he learned, through his son-in-law, George P. Hart, that the defendants were about to sell the horse for a board bill. Then this action was commenced.

There is evidence that Mr. Hart, who is admitted to be the son-in-law and agent of the plaintiff, and who made the demand and verified the complaint herein, knew that the horse was being kept at the stable of the defendants as the property of Blodgett. It is a well-settled principle that where one bestows upon another the unrestricted possession of property, the nature of which requires food and care, such possession carries with it the right to contract the necessary food and care, even to the extent of creating a lien as against the true owner for such necessity. In the case at bar, the possession in Blodgett was unqualified by the plaintiff, either as to time of sale or price, the same being, simply, "Take the horse to New York, and sell for me." The agent Blodgett having the right to contract for the keeping of the horse, and there being some evidence that the said Blodgett had agreed with the defendants that they should hold the horse for their bill, it was for the jury to say whether such contract was made, and what was understood by the parties. It is equally well settled

that, where one stands by and permits another to deal with his property as owner, he will be estopped from denying such ownership as to innocent parties dealing on the faith of such ownership. It was therefore a question for the jury to say whether or no permitting Blodgett to keep the horse in a public stable for about 800 days, or until his reasonable keeping would amount to considerable more than his value, which was $600, and this with his knowledge and the knowledge of his agent and son-in-law, was not such a holding out of ownership in Blodgett as to estop plaintiff from denying it, as against these defendants, who dealt with Blodgett on the faith of such ownership. Without discussing the question of statutory lien, we are of the opinion that the questions of fact arising in the case should have been submitted to the jury. Judgment reversed, and a new trial ordered; costs to abide the event.